SOUTHERN WIRE COMPANY, Appellant, v. ST. LOUIS BRIDGE AND TUNNEL RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, December 3, 1889.

Interstate Commerce Act : RETROSPECTIVE OPERATION. The provision of said act, prohibiting discrimination, is applicable to contracts made prior to its enactment. And a contract made by an interstate common carrier, prior to the passage of that act, is invalid, if it provides for lower rates for the transportation of property than those made to the public generally for like services, when said act went into operation.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*J. M. Holmes,* for the appellant.

The contract set out in the petition, not being exclusive, was a good and valid contract at common law. *Christie v. Railroad,* 94 Mo. 453. The interstate commerce act is not retrospective, and does not affect contracts in existence at its passage. *Chew Heong v. United States,* 112 U. S. 536; *McEwen v. Bulkley,* 24 How. 242; *Harvey v. Tyler,* 2 Wall. 328; *Trades' Union v. Railroad,* 1 Interstate Com. Dec., p. 371. Even were the contract exclusive, it would still be good *inter partes.* The exclusive feature only would be void, and that, only at the suit of a party injured, to-wit: Another shipper to whom the same rate was refused. Other shippers would be entitled to the same rate. *Scofield v. Railroad,* 23 Am. & Eng. R. R. Cas., p. 612. *McDuffee v. Railroad,* 52 N. H. 447; *Hayes v. Pennsylvania Co.,* 12 Fed. Rep. 309; *Kinsley v. Railroad,* 37 Fed. Rep. 181; *Goodridge v. Railroad,* 37 Fed. Rep. 182. The rule of law is the same under the interstate commerce act. *Coal Co. v. Railroad,* 1 Interst. Com. Rep., p. 107; *Larrison v. Railroad,* Same Vol., p. 149; *Smith v. Railroad,* Same Vol., p. 209; *Rice v. Railroad,* Same Vol., p. 503; *Scofield v. Railroad,* Vol. 2, p. 90.

*S. M. Breckenridge* and *M. F. Watts,* for the respondent.

The contract was, in fact, an exclusive contract, in that appellant was given a lower rate than was given any other shipper, and, as such, was void. *Railroad v. Fuel Co.,* 31 Fed. Rep. 652; *Sanford v. Railroad,* 24 Pa. St. 378; *Messenger v. Railroad,* 36 N. J. Law R. 407. The interstate commerce act was designed to prevent the execution of contracts similar to the one in question, and applies to pre-existing contracts as well as to

agreements made after its passage. Congress clearly has the power to enact laws, the effect of which will be to render compliance with pre-existing contracts impossible. And, where such a law imposes a penalty for its violation, the law applies to pre-existing as well as to future contracts. Cooley on Con. Lim. 264; *Knox v. Lee*, 12 Wallace, 547; Hare on Contracts, p. 654; Leake on Contracts, p. 782; Anson on Contracts, p. 172; Wharton on Contracts, pp. 367 and 305; Story on Contracts, pp. 750 and 751; *Lewis v. Welch*, 14 N. H. 294.

THOMPSON, J., delivered the opinion of the court.

The question for decision in this case arises upon a demurrer to the answer which was overruled by the court, after which the plaintiff, declining to plead further, suffered a judgment, from which it prosecutes this appeal.

The petition is as follows : " Plaintiff, a corporation duly organized under the laws of the state of Missouri, for cause of action, by attorney states : That the defendants are corporations duly organized under the laws of the state of Missouri, and, at the time heretofore mentioned, owned and operated a railroad from East St. Louis in the state of Illinois to the Union depot in the city of St. Louis and state of Missouri; that heretofore, to-wit, on the fifth day of April, 1886, by a contract in writing duly executed, defendants, for a valuable consideration by them received, jointly contracted with plaintiff to transfer all of the freight of plaintiff, east or west bound, during the period of time between said fifth day of April, 1886, and the thirty-first day of December, 1887, upon the following terms and conditions: For all classes of freight, coal, or material of any kind, from or to any line east of the Mississippi river, to track in defendants' yard, or to a private switch at plaintiff's factory, or for delivery in transit to any line west of the Mississippi river, four

dollars and fifty cents per car, irrespective of weight up to thirty-five thousand pounds, and two cents per hundred pounds for all in excess of that weight, the same to be free from switching or other charges. Plaintiff avers that defendants, on said fifth of April, 1887, entered upon the performance of said contract, and did transfer all of plaintiff's freight during said period of time. Plaintiff further states that, between the fifth day of April, 1887, and the thirty-first day of December, 1887, defendants transferred for plaintiff, to and from St. Louis and East St. Louis, one hundred and six cars loaded with freight, for which the aggregate transfer charges, under the terms of said contract, should have been the sum of five hundred and sixty dollars and twenty-five cents; yet defendants, without cause, plaintiff having done and performed all things to be done and performed by it under the terms of said contract, charged plaintiff for and compelled plaintiff to pay the sum of six hundred and fifty-seven dollars and eleven cents, being an excessive charge of ninety-six dollars and eighty-six cents, the particulars of which will more fully appear from the account hereafter filed and marked plaintiff's exhibit A. Plaintiff states that defendants were in possession of the only railroad track by which such cars could be transferred, and refused to deliver said cars unless the sums charged by them therefor were paid. Plaintiff states that they paid the several charges, amounting in the aggregate to the said sum of six hundred and fifty-seven dollars and eleven cents, under protest, and that defendants have failed and refused to pay to them the said ninety-six dollars and eighty-six cents overcharged as aforesaid, though often requested. Plaintiff further avers that, between the fifth day of April, 1887, and the thirty-first day of December, 1887, defendants transferred for plaintiff, under said contract, two hundred and fifty three cars of freight (the numbers of which and the dates of transfer

will more particularly appear by the account herewith filed marked exhibit B), for which transfer plaintiff paid defendants the prices stipulated in said contract; yet defendants did not hold plaintiff free from switching charges on said cars as they had agreed to do in and by the terms of said contract, but plaintiff was obliged to and did pay to the Missouri Pacific Railway Company, to whom said cars had been delivered by defendants for switching, and by whom said cars were delivered to plaintiff, switching charges on said cars at the usual and customary rates of two dollars per car, amounting in the aggregate to the sum of five hundred and six dollars. Plaintiff states that defendants have failed and refused to pay said ·sum or any part thereof, though often requested. Wherefore plaintiff prays judgment for said several sums of five hundred and six dollars and ninety-six cents and ninety-six dollars and eighty-six cents, amounting in the aggregate to the sum of six hundred and two dollars and eighty-six cents, and costs."

The answer is as follows: "·Defendants, for answer to plaintiff's petition, admit that, on the fifth day of April, 1886, they executed the contract with plaintiff in the petition set forth, and that between the fifth day of April, 1887, and the thirty-first day of December, 1887, they transferred for plaintiff one hundred and six cars of freight, and collected from plaintiff the sum of ninety-six dollars and eighty-six cents in excess of the amount due according to the terms of said contract ; admit that, between said dates, they did not hold plaintiff free from switching charges, as provided in said contract, and that plaintiff paid for such charges the sum of five hundred and six dollars.

"Further answering and by way of defense, defendants aver that the compensation provided for in said contract to be paid by plaintiff to defendants for services rendered thereunder was less than charged and

received by defendants from any other person or persons for similar services rendered during the same period (though special rates lower than those given the public generally were given two other shippers); and that during said period other shippers (save as above stated) were charged and paid at the rate of two dollars per car for switching cars ; that, on the fourth day of February, 1887, the congress of the United States enacted what is commonly known as the interstate commerce act, which went into effect on the fifth day of April, 1887, which made it illegal for carriers, subject to the provisions of said act, to charge any person a less compensation than charged other persons for like services, and required such carriers to issue and publish a schedule of rates, at which, without discrimination, goods would be transported for shippers; wherefore defendants aver that being interstate carriers, and subject to the provisions of said act, the said act rendered illegal and impossible the carrying out of said contract by them after the said fifth day of April, 1887, and made said contract illegal, void and *ultra vires;* that on said day it published and issued the said schedule of rates required by said act, and gave plaintiff notice that the said special contract would cease and terminate on said fifth day of April, 1887, and that on and after said date the said published schedule of rates would go into effect, and would constitute the basis of charges to be made by plaintiff for any services rendered ; that such action was taken by them in compliance with the provisions of said act; that after said date they charged and collected of plaintiff, for services rendered, the same compensation charged and collected of all other persons for like services, and which were the same charges published in said schedule; that the amount claimed in the petition to be due from the defendants is the difference between the amount due according to the terms of said contract, and the amount

charged and collected by defendants, based on and according to the said published schedule of rates."

The provisions of the federal statute known as the interstate commerce law, which control the question for decision upon this record, are as follows:

Section 2. "That if any common carrier, subject to the provisions of this act, shall, directly or indirectly, by any special rate, rebate, drawback or other device, charge, demand, collect or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service, in the transportation of a like kind of traffic, under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful."

Section 3. "That it shall be unlawful for any common carrier, subject to the provisions of this act, to make or give an undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

It will be perceived that, according to the averments of the answer, the contract which is the subject of the action was prohibited by the very letter of the statute; since the answer avers "that the compensation provided for in said contract to be paid by plaintiff to defendants for services rendered thereunder was *less* than charged and received by defendant from any other person or persons for similar services rendered during the same

period," etc., and the statute makes it unlawful for any common carrier, subject to the provisions of the act, directly or indirectly, by any special rate, rebate, drawback or other device, to "charge, demand, collect or receive from any person or persons a greater or less compensation for any service rendered or to be rendered in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service," etc. The contract as described in the answer was therefore within the very letter of the statute; and it is elementary law that if one agrees to do a thing which is lawful for him to do, and it becomes unlawful by an act of the legislature, the act avoids the promise: 2 Pars. Cont., p. 674; 1 Whart. Cont., sec. 305; Hare Cont., p. 654; Leake Cont., p. 782.

But it is argued that the statute, not being retroactive in its terms, is to be construed as prospective only and as not having the effect of abrogating existing contracts in conflict with its prohibitions. We do not, of course, question the general principle that courts uniformly refuse to give to statutes a retrospective operation, whereby rights previously vested are injuriously affected, unless compelled to do so by language so clear and positive as to leave no room for doubt that such was the intention of the legislature. This principle has been affirmed so often by the supreme court of the United States, that it must be conceded to be a well settled principle to be applied in the interpretation of federal statutes. *Chew Heong v. United States*, 112 U. S. 536, 559; *United States v. Heth*, 3 Cranch (U. S.) 398, 413; *Murray v. Gibson*, 15 How. (U. S.) 421, 423; *McEwen v. Den.* 24 How. (U. S.) 242, 244; *Harvey v. Tyler*, 2 Wall. (U. S.) 328, 347; *Sohn v. Watterson*, 17 Wall. (U. S.) 596, 599; *Twenty per Cent. Cases*, 20 Wall (U.S.) 179, 187. It is possibly of more peculiar application in

the interpretation of federal than of state statutes, since no prohibition rests upon congress from passing laws impairing the obligation of contracts, such as the federal constitution imposes upon the legislatures of the states.

But notwithstanding this, we are clear of all doubt that it was the purpose of congress, in enacting this statute, to put an end to all existing contracts and arrangements, producing unjust discrimination among shippers upon interstate railways. It is a most important general police regulation, designed to prohibit and suppress great abuses which had sprung up among interstate public carriers, whereby preferences were given to wealthy and favored shippers, which had the effect of driving out of business and destroying those who were not thus favored. It would greatly impair its effect to hold that it does not operate to abrogate existing contracts which are opposed to its prohibitions. Such a holding would open the door to fraudulent evasions of it by the making of contracts creating unjust discriminations and antedating them, so as to place them seemingly beyond its reach.

It is further argued that the statute is merely declaratory of the common law, and that the supreme court of Missouri has furnished for our guidance the rule for the decision of this question, under the principles of the common law, in *Christie v. Missouri Pacific Railway Company*, 94 Mo. 453. That case decides that a railway carrier has the right to contract to ship freight at a lower rate, if he chooses to do so, than its published tariff, and that such a contract is not violative of the constitution of this state (Const. Mo., art. 12, sections 12, 23), nor of the provisions of the Revised Statutes of Missouri of 1879 (section 821), nor against public policy (which is tantamount to saying, nor against the common law), unless the privilege to ship at such rate is granted *exclusively* to the shipper with whom it is made, or is

*denied* to other shippers.    Under that decision, it is the *exclusiveness* of the privilege, granted to one and denied to another, which makes the discrimination and renders the contract void.    In that case the action was similar to that in the present case, and the supreme court of Missouri held that the plaintiff was entitled to recover.    Certainly, if that case expresses the rule of the common law, then the federal statute, now under consideration, is *not* declaratory of the common law merely, because the federal statute prohibits, in explicit terms, the doing of what that decision pronounces to be lawful.    I would take occasion to say for myself, that I do not believe that that decision expresses the rule of the common law, though if this case had depended upon the law of Missouri, we should, of course, be bound to follow it.    My own opinion on this question remains the same as that which I expressed in the case of *Rothschild v. Wabash Railroad*, 15 Mo. App. 242, 248, "that railway carriers are bound to serve the public equally, just as the postoffice department serves the public equally."    But it is enough for the purposes of this decision to say that that case did not involve the interpretation of section 2, of the interstate commerce act, and, consequently, furnishes no authority for the decision of the question now before us.    But we do not see how the view that the statute is merely declaratory of the common law can help the appellant's argument, since, whether it be so or not, it must be construed to mean what it explicitly says; and, if it is declaratory of the common law, there can be no conceivable objection to its being construed so as to have a retrospective effect, since, in this view, it would be regarded as merely furnishing additional remedies for mischiefs already within the prohibitions of the principles of the common law.

But it is argued that there is nothing in the interstate commerce act which required the defendants, when that act went into effect, to make a *higher* rate than

that which it made in behalf of the plaintiff under this contract; that the defendants might have complied with the statute by making a rate *no higher* than that allowed to this favored shipper, and that their mere voluntary act, in making a higher rate, when they were not obliged to do so, cannot excuse them in abrogating their contract with the plaintiff. The answer to this is, that the rate or rates at which the defendants served all other shippers was already higher than 'that agreed upon in this contract, for which reason, alone, the contract became inoperative and void on the very day when the interstate commerce law took effect. From that time it was discharged by operation of law, and the defendants were under no obligation further to respect its terms. If the rate, described by this contract, had been the same rate at which all other members of the public were served, so that the contract did not become unlawful with the taking effect of the interstate commerce act, then this argument might be pertinent, and of force.

In short, the case falls within the rule, that a contract for the doing of a thing which is prohibited by law cannot be the foundation of an action. The judgment will be accordingly affirmed. All the judges concur.